UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LUIS ANGUIANO,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

No. 1:14-CV-3074-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 19. Attorney D. James Tree represents Luis Anguiano (Plaintiff); Special Assistant United States Attorney Lisa Goldoftas represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on July 7, 2010, alleging disability since January 27, 2010, due to "Left Knee Injury." Tr.

127. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Verrell Dethloff held a hearing on October 3, 2012, Tr. 37-61, and issued an unfavorable decision on October 26, 2012, Tr. 20-33. The Appeals Council denied review on April 15, 2014. Tr. 1-6. The ALJ's October 2012 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 30, 2014. ECF No. 1, 4.

**STATEMENT OF FACTS**

Plaintiff was born on November 27, 1988, and was 21 years old on the alleged onset date, January 27, 2010. Tr. 123. Plaintiff went to school through the 10th grade and had been working to obtain a GED. Tr. 40. His "Disability Report" indicates he stopped working in 2008 "because they were not giving me enough hours." Tr. 127. At the time of the administrative hearing, Plaintiff testified he had been working part-time for two weeks at a Jack in the Box restaurant. Tr. 51. He indicated the maintenance job consisted of "light work," including taking out the garbage and cleaning the tables and the bathrooms. Tr. 51. He stated he was having difficulty with the job, needed to take more breaks than were permitted, and already had to call in sick one day because of depression and leg pain. Tr. 51-52. Plaintiff also testified he recently completed community service which consisted of picking up garbage on the side of the freeway. Tr. 45. However, he stated he was only able to complete three of the 10 days of work because he was unable to walk the long distances necessary for the community service. Tr. 45.

Plaintiff testified he hurt his left knee in 2010 and had surgery on the knee in May 2010. Tr. 46. A year following the surgery, he continued to have difficulty standing and getting around. Tr. 47. He indicated he had to elevate his leg often at that time. Tr. 47. Plaintiff stated he had some initial improvement with physical therapy, but then lost funding for the physical therapy. Tr. 48. He described the

trouble with his left knee as swelling, throbbing and aching. Tr. 44, 49. He stated he takes no medication for this knee pain. Tr. 44.

Plaintiff testified he could be up on his leg for only 30 minutes at a time, and sit for only 30 minutes at a time. Tr. 48-49. He stated that elevating his leg helps with the pain and swelling, and he elevates his leg about three times a day, for 30 minutes each time. Tr. 49-50.

Plaintiff testified he also experiences anxiety which makes it difficult for him to concentrate. Tr. 56. He indicated that, because of this anxiety, he is being accommodated in his GED testing by being allowed to have a private room for the tests. Tr. 56-57.

Plaintiff testified he had a troubled childhood. Tr. 52-53. He stated he basically raised himself in the streets and grew up in rough neighborhoods with gang activity. Tr. 52-53. He indicated he got shot when he was 13 years old and had been "constantly" shot at and "jumped." Tr. 53. This upbringing resulted in paranoid thinking and a feeling of always needing to watch his back. Tr. 53-54. Plaintiff testified that when he is in large crowds, he feels like someone is going to attack him. Tr. 54. Plaintiff stated he has these feelings of anxiety about being attacked at his current Jack in the Box job. Tr. 54-55. He reported he occasionally has anxiety attacks and needs to stay in the back of the restaurant, away from the crowd. Tr. 55.

With respect to daily activities, Plaintiff stated he helps clean the house, mops the kitchen, takes out the garbage and does whatever needs maintaining around the home. Tr. 45. He will also pick up his girlfriend's children, ages four, six and seven, from the bus station. Tr. 44-45. Apart from chores and helping with the children, Plaintiff indicated he liked to exercise to maintain his upper body strength. Tr. 46. He testified he will also go to the park with his girlfriend and the children, but related he is not able to run and play with them and primarily stays on the bench while they play. Tr. 50.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, with deference to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see*, *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment

prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

**ADMINISTRATIVE DECISION**

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 7, 2010, the application date. Tr. 22. At step two, the ALJ determined Plaintiff had the severe impairments of status-post knee reconstruction at the anterior cruciate ligament (ACL), medial cruciate ligament (MCL) and posterior cruciate ligament (PCL). Tr. 23. The ALJ specifically determined Plaintiff did not have a severe mental impairment. Tr. 23. In so finding, the ALJ discounted the opinion of social worker Russell Anderson. Tr. 23-24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 25. The ALJ assessed Plaintiff's residual functional capacity (RFC) and determined he could perform sedentary exertion level work (he can lift and carry 10 pounds frequently and 20 pounds occasionally, can stand or walk for 2 hours in an 8-hour workday, and can sit for 6 hours in an 8-hour workday with unlimited pushing and pulling), except that he can only occasionally climb ramps and stairs, kneel and crawl; can never climb ladders, ropes or scaffolds; and should avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights. Tr. 25-26.

///

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 30. At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 201.24. Tr. 30-31. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 7, 2010, the application date, through the date of the ALJ's decision, October 26, 2012. Tr. 31-33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly according little weight to the opinion of social worker Russell Anderson; (2) improperly rejecting his subjective complaints; and (3) failing to call a vocational expert.

## DISCUSSION

### A. Plaintiff's Credibility

Plaintiff contends the ALJ committed reversible error by making an improper credibility analysis. ECF No. 15 at 17-20.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. Tr. 27. As noted above, the ALJ determined Plaintiff retained the RFC to perform a range of sedentary exertion level work. Tr. 25-26.

With regard to the credibility determination, the ALJ first held that Plaintiff's low earnings three years prior to the alleged onset date suggested reasons other than the alleged disability prevented work. Tr. 22. The Ninth Circuit has held that "poor work history" or a showing of "little propensity to work" during one's lifetime may be considered as a factor which negatively affects a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff has not challenged the ALJ's finding in this regard.

The ALJ further noted Plaintiff, at the time of the administrative hearing, was working 20 hours a week at a level which exceeded sedentary exertion. Tr. 28. The ability to work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted a claimant's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment). While Plaintiff correctly points out that his hearing testimony revealed he had only been working for two weeks prior to the administrative hearing and had experienced difficulties with work performance on this job, the ALJ did not err by considering Plaintiff's ongoing part-time work as a basis to find him less than fully credible in this case.

The ALJ also found Plaintiff's self-reported activities contravened the severe level of functional impairments alleged. Tr. 27. It is well-established that the

nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ indicated Plaintiff reported he went out with his girlfriend and took his children, ages 4, 6 and 7, to the park on a regular basis; was working part-time at a level which exceeded sedentary exertion; described doing upper-body exercises on a regular basis; and reported being able to do house cleaning, take out the garbage, wash the dishes, and pick up the children from school. Tr. 27-28. The ALJ found the combination of Plaintiff's social activities, household routine, ongoing part-time work, and exercise regimen demonstrated he was capable of performing at least sedentary level work. Tr. 28. While one does not need to be "utterly incapacitated" to be disabled, *Fair*, 885 F.2d at 603, the ALJ appropriately determined that Plaintiff's level of activity was not consistent with his claim of inability to perform sedentary exertion level work.

The ALJ next indicated that despite his complaints of disabling knee pain, Plaintiff was not taking pain medication during the relevant time period. Tr. 24, 28. Lack of prescription medication is properly considered when weighing credibility. *See e.g.*, *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). Plaintiff does not contest the fact that he was taking no pain medication at the time of the hearing.

The ALJ lastly indicated the medical evidence of record did not support Plaintiff's assertion that he was unable to perform at least sedentary exertion level work. Tr. 28-30. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ correctly noted attending orthopedist Christopher Wahl, M.D., opined that Plaintiff could be "released for work" in October 2010, less than a year from the January 27, 2010, alleged onset date. Tr. 28, 278. Dr. Wahl noted that while Plaintiff remained non-weight bearing following his knee surgery, this limitation was only

limited to 6 to 8 weeks and Plaintiff was unable to perform work for only 24 weeks. Tr. 28, 278. The ALJ also indicated Andrew Laurence Merritt, M.D., performed a physical examination of Plaintiff's left knee on June 4, 2010, and noted the knee was overall "very stable with anterior and posterior drawer and medial and lateral laxity." Tr. 29, 193. The ALJ further reported that on July 20, 2011, state-agency medical consultant Brent Packer, M.D., described work limitations consistent with the ALJ's sedentary[1] RFC assessment. Tr. 29, 256. As noted by the ALJ, one year following Plaintiff's knee surgery, on May 25, 2011, Plaintiff's provider Dr. Ahmed Tarique reported that Plaintiff was "almost completely recovered" from knee surgery and had the ability to stand for 4 hours, sit for 8 hours and lift 40 to 50 pounds frequently and 100 pounds occasionally. Tr. 29, 238-239. Finally, the ALJ indicated physical exams completed by Sarah Scott, RN, and Tara Morris, ARNP, in 2012 provided further proof that Plaintiff could work. Tr. 29. The ALJ specifically identified Ms. Morris' note that Plaintiff reported on August 12, 2012, that he was doing community service, walking a lot and bending down to pick up garbage. Tr. 29, 390. Plaintiff has not challenged the ALJ's credibility finding in this regard, and, in any event, there is simply no objective medical evidence of record suggesting Plaintiff was limited physically to a greater extent than determined by the ALJ in this case. It was appropriate for the ALJ to conclude that the objective medical evidence did not support allegations by Plaintiff that he was not able to perform sedentary exertion level work.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in

---

[1]A sedentary job is defined as one which involves lifting no more than 10 pounds at a time and consists of mostly sitting with only occasional walking or standing. *See* 20 C.F.R. § 404.1567(a).

evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the Court finds the ALJ provided specific, clear and convincing reasons that are fully supported by the evidence of record for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by concluding Plaintiff's statements concerning the extent of his symptoms and limitations were not entirely credible in this case.

**B. Plaintiff's Mental Health**

Plaintiff also contends the ALJ erred by according little weight to the August 2011 opinions of Licensed Clinical Social Worker Russell Anderson that Plaintiff had several marked and moderate functional limitations and would likely do better working in more solitary type of work. ECF No. 15 at 10-16. Plaintiff argues the opinions expressed by Mr. Anderson demonstrate he has severe mental impairments. ECF No. 15 at 16.

The Social Security regulations distinguish between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. § 404.1513(a), (d). A Licensed Clinical Social Worker is considered an "other source," *see* 20 C.F.R. § 404.1513(d), and does not receive the same deference as medical source opinions. *See Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). An ALJ may consider evidence from "other sources" when addressing the severity of a claimant's impairments and how those impairments affect the ability to work. *See* 20 C.F.R. § 404.1513(d). However, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (because a physician's assistant was not an

///

acceptable medical source, the ALJ could discount the physician's assistant's opinion for germane reasons).

Mr. Anderson completed a Psychological/Psychiatric Evaluation form on August 10, 2011. Tr. 365-373. It appears the evaluation form is co-signed by Philip Rodenberger, M.D. Tr. 369. Although the Ninth Circuit previously held in *Gomez*, 74 F.3d at 971, that non-physicians working under supervision are to be treated as teams, the "interdisciplinary team" discussed in *Gomez* pertained to a regulation that has since been repealed. *See Molina*, 674 F.3d at 1111 n. 3 (holding that *Gomez* relied in part on language from a regulatory section that has been repealed: 20 C.F.R. § 416.913(a)(6), which previously stated "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence"); *Gomez*, 74 F.3d at 971. In any event, Mr. Anderson alone was identified as the "examining professional" on the report and signed as the "examining professional" responsible for the report. Tr. 369. There is no evidence Mr. Anderson regularly consulted with or was closely supervised by Dr. Rodenberger in this case. Dr. Rodenberger merely co-signed as the "releasing authority" on the report. Although Dr. Rodenberger signed as the "releasing authority," there is no evidence Dr. Rodenberger interacted with Plaintiff or prepared, supervised or concurred in Mr. Anderson's report.

Mr. Anderson is not an acceptable medical source; therefore, his opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security Regulations. 20 C.F.R. § 416.913. Mr. Anderson is considered an "other source," and, as discussed above, an ALJ may discount testimony from an "other source" if he "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ

///

provided germane reasons for discounting the opinion of Mr. Anderson in this case. *See infra*.

The ALJ first indicated that even though Mr. Anderson's report was for the purpose of assessing Plaintiff's mental capacity, Mr. Anderson cited Plaintiff's physical complaints as the primary basis for his opinions. Tr. 23. As noted by the ALJ, Mr. Anderson wrote Plaintiff was "limited in the types of activities that he can engage in **primarily** due to a leg injury." Tr. 23, 368 (emphasis added). Because the purpose of the evaluation was for Mr. Anderson to assess Plaintiff's psychological condition, any symptoms related to Plaintiff's physical condition must have been based on Plaintiff's self-report regarding those physical symptoms. The ALJ further noted Mr. Anderson diagnosed major depressive disorder, single episode, severe without psychotic features, and post-traumatic stress disorder despite indicating he did not directly observe symptoms of Plaintiff's anxiety. Tr. 23, 366. Although Plaintiff contends Mr. Anderson listed Plaintiff's anxiety symptoms in the report, ECF No. 15 at 12-13, it is clear those listed symptoms are based on Plaintiff's self-reported allegations.

As determined in Section A above, the ALJ properly found that Plaintiff was not entirely credible. *See supra*. Consequently, it would be proper for the ALJ to discount a report based primarily on his non-credible self-reports. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan v. Comm'r. of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted). This situation is distinguishable from one in which a medical professional provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not

provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"). In this case, Mr. Anderson did not provide an independent basis to support his assessment of Plaintiff's functioning. This lack of support is a germane reason to discredit the opinion.

The ALJ also indicated Mr. Anderson rated Plaintiff's GAF score at 45, indicating serious functional limitations, but that this finding is contravened by Plaintiff's testimony of regularly spending time with his girlfriend and three children at the park and ongoing part-time work. Tr. 23. The ALJ additionally noted Plaintiff's testimony did not describe mental limitations with daily activities, social limitations or issues with concentration, persistence and pace. Tr. 24. The ALJ thus found that the extreme limitations assessed by Mr. Anderson were unsupported by or inconsistent with the weight of the evidence of record.

An ALJ may reject lay witness evidence if other evidence in the record regarding the claimant's activities is inconsistent therewith. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (an ALJ's rejection of lay witness evidence because it was inconsistent with claimant's successful completion of continuous full-time coursework constituted a germane reason); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason). At the administrative hearing, Plaintiff testified his daily activities consist of helping clean the house, mopping the kitchen, taking out the garbage, doing whatever needs maintaining around the home, and picking up his girlfriend's children, ages four, six and seven, from the bus station. Tr. 44-45. Aside from chores and helping with the children, Plaintiff indicated he liked to exercise to maintain his upper body strength. Tr. 46. He further testified he will go to the park with his girlfriend and the children, but related he is not able to run and play with them and

primarily stays on the bench while they play. Tr. 50. The daily activities described by Plaintiff are inconsistent with Mr. Anderson's assessment of serious functional limitations. This inconsistency noted by the ALJ is a germane reason to discredit Mr. Anderson's opinion.

Based on the foregoing, the Court finds the ALJ provided germane reasons for according little weight to Mr. Anderson's "other source" opinion. Accordingly, the ALJ did not err at step two of the sequential evaluation process by finding Plaintiff had no severe mental impairments. Tr. 23-24.

**C. Step Five**

Plaintiff lastly asserts that the ALJ erred by failing to call a vocational expert to determine if his non-exertional limitations restricted his work capacities. ECF No. 15 at 20-21.

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that he retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ can satisfy this burden by either (1) applying the grids[2] or (2) taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

---

[2]The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart*, 856 F.2d at 1340 (citing *Derosiers v. Secretary of Health and Human Serv.*, 846 F.2d 573, 578 (9th Cir. 1988).

In *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999), the Ninth Circuit held that the presence of "significant non-exertional impairments" may make reliance on the grids inappropriate. *Tackett*, 180 F.3d at 1101-1102. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines, and, in such a case, the guidelines would be inapplicable. *Id.* at 1102. However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. *Id.* The Ninth Circuit determined that Tackett had significant non-exertional limitations, the need to shift, stand up, or walk around every 30 minutes, which were not contemplated by the "sedentary work" grid rules. *Id.* at 1104. The Ninth Circuit thus concluded the ALJ committed reversible error by finding Tackett was not disabled without the aid of the testimony of a vocational expert. *Id.*

Here, the weight of the record evidence supports the ALJ's RFC finding that Plaintiff is capable of performing sedentary exertion level work with specified postural limitations. Tr. 25-26. Unlike the claimant in *Tackett*, there has been no showing that Plaintiff needs to change positions every 30 minutes, and the weight of the record evidence does not otherwise support Plaintiff's assertion that he suffers from "significant non-exertional limitations." Because Plaintiff's non-exertional limitations do not impede his ability to perform unskilled sedentary exertion level work, Tr. 31, the ALJ was not required to obtain vocational expert testimony to satisfy his burden at step five of the sequential evaluation process. Thus, the ALJ did not err by relying on the grids in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED April 2, 2015.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE